United States District Court
Southern District of Texas
**ENTERED**
February 21, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAIME SANCHEZ, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:20-cv-02883 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| ANTONY J. | § | |
| BLINKEN, | § | |
| Defendant. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Department of State revoked the passport of Plaintiff Jaime Sanchez in June 2020. Pending is his petition for a declaratory judgment under 8 USC § 1503(a) and 28 USC § 2201 that he is a United States national and entitled to have the Department of State issue him a passport. Dkt 1. The parties proceeded to bench trial on April 26, 2022.

Rule 52(a)(1) of the Federal Rules of Civil Procedure provides:

> In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.

As to factual findings, this "exacts neither punctilious detail nor slavish tracing of the claims issue by issue and witness by witness." *Century Marine Inc v United States*, 153 F3d 225, 231 (5th Cir 1998) (quotation marks and

citation omitted). The rule is instead satisfied where the findings present the reviewer with "a clear understanding of the basis for the decision." Ibid.

For reasons specified below, it is determined here as a matter of law that judgment should issue in favor of the Secretary of State. To the extent that any factual finding reflects or is better understood as a legal conclusion, it is also deemed a conclusion of law. Likewise, to the extent that any legal conclusion reflects or is better understood as a factual finding, it is also deemed a finding of fact.

## FINDINGS OF FACT

1. Testimony was heard from the following witnesses in this order:
   - Jaime Sanchez, the Plaintiff in this action, Dkt 66 at 6–41;
   - Ambrosio Sanchez, brother of Jaime Sanchez, Dkt 66 at 42–54.

2. The following narrative is found to be accurate based upon the weight of credible evidence and testimony received.

### 1. Conflicting birth certificates

3. Plaintiff Jaime Sanchez applied for a United States passport on October 19, 2007. Dkt 56-2.

4. When Sanchez applied for the passport, he submitted a birth certificate from the State of Texas registered on February 16, 1970. Dkt 57-2. That birth certificate states that Sanchez was born in Brownsville, Texas, on February 12, 1970. It lists his parents as *Ambrosio Sanchez* and *Mariana Garza*. And it further indicates that he was delivered by a midwife named *Enriqueta Gonzalez*.

5. Sanchez was issued passport number 442572410 on April 22, 2008. Dkt 56-1.

6. Sanchez used that passport number to obtain passport number 565620687 on September 14, 2017. Dkt 56-8.

7. The State Department then revoked passport number 565620687 on June 17, 2020. An investigation had revealed a Mexican birth certificate in Sanchez's name that predated the Brownsville birth certificate. Dkt 56-1. The Mexican birth certificate bears a registration date of November 21, 1969, and indicates that Sanchez was born in Matamoros, Tamaulipas, Mexico, on October 18, 1969. Dkt 56-6. It lists his parents as *Ambrosio Sanchez* and *Ana Maria Garza*. Also submitted as evidence was a handwritten book copy of the birth certificate, bearing the same information. This copy seems merely to have been an entry in the "book of births" of Matamoros for record-keeping purposes. Dkt 56-7.

### 2. Family background

8. Sanchez's biological mother and father are Maria Ana Garza Garza and Ambrocio Sanchez Pecina. Both were citizens of Mexico and are now deceased. Dkt 56-4 (death certificate, mother); Dkt 56-5 (death certificate, father).

9. Maria Ana Garza Garza passed away in Matamoros, Tamaulipas, Mexico, on January 20, 2003. Her parents—Sanchez's maternal grandparents—were Petra Garza and Evaristo Garza Vela. Dkt 56-4 at 1.

10. Ambrocio Sanchez Pecina was the spouse of Maria Ana Garza Garza. He passed away in Matamoros, Tamaulipas, Mexico, on October 16, 2007. His parents—Sanchez's paternal grandparents—were Maria Pecina and Ramon Sanchez. Dkt 56-5 at 1.

11. The Government asserts that Enriqueta Gonzalez—the midwife listed on the Brownsville birth certificate—is also deceased. Dkt 63 at ¶ 8. Nothing of record establishes this fact. Regardless, she wasn't called to testify.

### 3. Birth narrative

12. Sanchez is the youngest of nine siblings. His siblings include an older brother, Ambrosio Sanchez.

13. Ambrosio testified as to his recollection about the day that Sanchez was born. Ambrosio was then six years old. He testified that the family lived in Matamoros at the

time, and that his mother would travel across the border to Brownsville on the days that she worked. He further testified that, on the day that Sanchez was born, his mother didn't return home at the normal time. When she did return home a couple of days later, she had Sanchez with her. Id at 44–45.

14. Sanchez and his brother also both testified that while their mother was still alive, she said that Sanchez was born in Brownsville. Dkt 66 at 10–11, 14–15, 18–19, 45. The Government stated a continuing objection to such testimony as hearsay, which was reserved for later decision. Id at 10.

15. Sanchez and his brother both testified that neither knew that their mother had registered a birth certificate for Sanchez in Matamoros. Id at 13, 52. But they also both testified that their mother's name was, simply, *Mariana Garza*. Id at 7, 27, 43. This is suggested as important (as noted at several points below) because the Texas birth certificate states her name in such fashion, while the two versions of the Mexican birth certificate state her name *Ana Maria Garza* (with the mother signing one version as *Maria Ana Garza de Sanchez*). Compare Dkt 57-2, with Dkts 56-6 & 56-7.

16. It's otherwise undisputed that Sanchez lived in Mexico with his family after his birth. He attended school in Mexico through the sixth grade. He moved to the United States in 1986. Also undisputed and established by testimony is the fact that Sanchez has filed annual income-tax returns for over thirty years and has maintained good moral character in the United States since 1986. See Dkt 66 at 20–21. On the other hand, his testimony was also that his three children were born in Mexico. See id at 9–10.

### 4. Pertinent documents

17. The Government submitted two versions of the Matamoros birth certificate at trial. One is a certified apostilled birth certificate, and the other is a certified book copy from the records of the government of Matamoros. Dkts 56-6 & 56-7.

4

18. The apostilled birth certificate lists Sanchez's father's name as *Ambrosio Sanchez*. Dkt 56-6. The book copy lists his maternal grandparents as *Petra Garza* and *Evaristo Garza* and his paternal grandparents as *Maria Pesina* and *Ramon Sanchez*. Dkt 56-7.

19. Both the apostilled birth certificate and the book copy list the name of Sanchez's mother as *Ana Maria Garza*. Dkt 56-6. This is a slight variation on her name as it appears in other records. And the book copy bears signature by Sanchez's mother as *Maria Ana Garza de Sanchez*, consistent with (or nearly identical to) her name as it appears in other records discussed below. Dkt 56-7.

20. The Texas birth certificate from Brownsville lists Sanchez's parents as *Mariana Garza* and *Ambrosio Sanchez*. Dkt 57-2.

21. A border crossing card issued to Sanchez's mother on September 22, 1959, listed her name as *Mariana Garza de Sanchez*. Dkt 57-4. This is somewhat consistent with her signature on the Mexican book copy, though consolidating *Maria* and *Ana* simply to *Mariana*.

22. Sanchez's 2007 passport application lists his mother's name as *Mariana Garza*. Dkt 56-2 at 2. The supplemental worksheet accompanying the application lists her name as *Maria Ana Garza*. Id at 5.

23. It is determined here as a factual finding that *Maria Ana Garza Garza* is the original, legal name of Sanchez's biological mother. It is further determined that she used various iterations of that name throughout her life, with these variations including *Ana Maria Garza*, *Maria Ana Garza de Sanchez*, *Mariana Garza de Sanchez*, *Mariana Garza*, and *Maria Ana Garza*.

24. Support for the fact that *Maria Ana* and *Ana Maria* are both shortened by familiarity or inadvertence to *Mariana* also comes from the name of one of Sanchez's sister, *Ana Maria Sanchez Garza*. See Dkt 56-2 at 5 (passport application, listing siblings). Sanchez's brother referred to his sister *Ana Maria* as *Mariana* during testimony. Dkt 66 at 33. When specifically questioned

5

about that by the Court at the conclusion of his testimony, he denied having done so. Dkt 66 at 36–37.

25. It is further determined as a factual finding that the Matamoros birth certificate is authentic and valid. Despite there being various iterations of Sanchez's mother's name, the Matamoros birth certificate contains accurate corroborating information. This includes the listing of Sanchez's father, paternal grandparents, and maternal grandparents. Sanchez's mother also signed the book copy of the birth certificate as *Maria Ana Garza de Sanchez*.

26. It is further determined here as a factual finding that none of the evidence submitted by Sanchez overcomes the validity of the two versions of the birth certificate establishing his birth in Matamoros.

## CONCLUSIONS OF LAW

Plaintiff Jaime Sanchez establishes without question that he has made a successful life for himself in the United States since at least 1986. There's no record of him having ever engaged in criminal activity of any kind. There's no suggestion that he's anything other than a hard worker who has never failed to pay his taxes. But while such observations cast Plaintiff in a favorable light, they ultimately concern matters of policy for the political branches to address, were there a will to do so. The questions of law presented here are different and narrow.

Section 1503(a) of Title 8 to the United States Code states:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency

6

> for a judgment declaring him to be a national of the United States.

See also *Cobos v. Kerry*, 2015 WL 3965660, *6 (SD Tex), citing *Vance v. Terrazas*, 444 US 252, 256 (1980).

As used in Section 1503(a), the term *national of the United States* means "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 USC § 1101(a)(22). The only question presented here concerns the former provision, being whether Sanchez is a citizen of the United States.

Birth and naturalization are the only two sources of citizenship. *Miller v Albright*, 523 US 420, 423 (1998). "The court may not grant citizenship out of equity or in the interests of justice." *Garcia v Clinton*, 915 F Supp 2d 831, 834 (SD Tex 2012); see also *Cobos*, 2015 WL 3965660 at *6, citing *INS v Pangilinan*, 486 US 875, 883–84 (1988). The plaintiff in a Section 1503 action instead bears the burden of proving by a preponderance of the evidence that he or she is an American citizen. *Escalante v Clinton*, 386 F Appx 493, 496 (5th Cir 2010, *per curiam*), citing *De Vargas v Brownell*, 251 F2d 869, 870 (5th Cir 1958). And the Fifth Circuit instructs that doubts be resolved "in favor of the United States" and against citizenship. See *Bustamante-Barrera v Gonzales*, 447 F3d 388, 395 (5th Cir 2006).

The existence of a valid state birth certificate "does not conclusively determine citizenship." *Garcia*, 915 F Supp 2d at 834. To the contrary, a foreign birth record that was contemporaneously filed with birth is "almost conclusive evidence" of alienage. Ibid, quoting *Pinto-Vidal v Attorney General of the US*, 680 F Supp 861, 862 (SD Tex 1987). And factually correct information in a foreign birth certificate—such as the names, ages, and addresses of parents and grandparents—lends credibility to the validity of that birth certificate. See *Sanchez v Kerry*, 2014 WL 2932275, *1 (SD Tex); see also *Villafranca v Blinken*, 2022 WL 1210762, *4 (SD Tex).

7

Two competing birth certificates are here in evidence—one from the State of Texas and two versions from Mexico. Compare Dkt 57-2, with Dkts 56-6 & 56-7. The authenticity of the Texas birth certificate isn't in dispute. But the Secretary argues that the two versions of the Matamoros birth certificate are valid and establish that Sanchez was born in Mexico. Sanchez contends to the contrary that the inaccuracy regarding his mother's name in each version of the foreign birth certificate renders them unreliable. He claims that the Brownsville birth certificate together with the testimony he and his brother gave at trial establish that he's an American citizen.

It is concluded here as a matter of law (or as a mixed question of law and fact) that the pertinent birth records submitted by the Secretary are authentic, admissible, and accurate. The Matamoros birth certificate and book copy predate the Brownsville birth certificate and contain corroborating details that lend them credibility. The birth certificate and book copy accurately list the name of Sanchez's father, with the book copy accurately listing the names of his maternal and paternal grandparents as well. The discrepancy regarding his mother's name does little to undermine the credibility of the foreign birth records. Her name is presented with minor variations throughout several official documents. One of these variations is *Maria Ana Garza de Sanchez*. Sanchez's mother signed the book copy under this name, which is nearly identical to how her name appears in other documents. See Dkts 56-4 (death certificate listing name as *Maria Ana Garza Garza*), 57-4 (early border-crossing card listing name as *Mariana Garza de Sanchez*) & 56-2 at 2, 5 (2007 passport application and supplemental worksheet listing Sanchez's mother's name as *Mariana* in one place and *Maria Ana* in another). This suggests that the *Maria Ana* who signed the book copy is indeed the woman who gave birth to Sanchez, and that she did so in Matamoros in October 1969.

It is further concluded that Sanchez fails to meet his burden to prove by a preponderance of the evidence that he is an American citizen. He presented testimony from no

8

disinterested witness at the hearing. Instead, only he and his brother, Ambrosio, testified. Plainly, Sanchez isn't competent to give any direct testimony as to the circumstances of his own birth. Testimony from his brother is likewise less reliable because it concerns an event which he didn't personally attend or perceive at a time when, in any event, he was only six years old. See FOF ¶ 13. And the Fifth Circuit admonishes that testimony of interested witnesses often isn't credible and must instead be taken "with a grain of salt." *De Vargas*, 251 F2d at 871; see also *Patel v Rice*, 403 F Supp 2d 560, 565 (ND Tex 2005).

As noted above, Sanchez and his brother also both testified that their mother, during her life, said that Sanchez was born in Brownsville. See FOF ¶ 14. The Government stated a continuing objection to such testimony as hearsay, which is here overruled. True, the mother's statement is hearsay. But it falls within the exception for statements by an unavailable declarant about personal or family history under Rule 804 of the Federal Rules of Evidence. Simply put, Sanchez's mother was unavailable to testify "because of death," thus falling within the ambit of subsection (a)(4). And her statement that Sanchez was born in Brownsville concerns the "birth" of someone to whom she was "related . . . by blood," thus falling within the ambit of subsection (b)(4)(B).

Even so, admissibility doesn't establish credibility. See *Van Alstyne v GC Services LP*, 2009 WL 10695068, *4 (SD Tex) (distinguishing between credibility and admissibility of hearsay statement). Proceedings under Section 1503 of their nature involve presentation of evidence to the bench. This in turn means that the court must weigh the evidence, determine credibility of witnesses, and resolve conflicting testimony. See *Garcia v Limon*, 542 F Supp 3d 577, 582 (SD Tex 2021); FRCP 52(a). And the mother's purported out-of-court statements concerning the place of Sanchez's birth isn't credible. It was conveyed in testimony only by the same two interested witnesses, where the subject matter and circumstances of the statements (even assuming such were made) don't

9

come with typical signals of reliability. Cf FRE 804(b)(3) (statement against interest) & 804(b)(6) (statement offered against party that wrongfully caused declarant's unavailability); see also FRE 807 (residual exception for statement "supported by sufficient guarantees of trustworthiness"). Regardless, such testimony in no way explains or discounts the two versions of the Matamoros birth certificate, and thus doesn't outweigh the conclusion as to their validity.

In sum, the two versions of the Matamoros birth certificate are valid and establish that Sanchez was born in Mexico several months before the date of birth listed on the Brownsville birth certificate.

## CONCLUSION

Plaintiff Jaime Sanchez has failed to meet his burden of proof to establish that he is a national of the United States by birth. His request for a declaratory judgment and injunctive relief entitling him to a United States passport is thus DENIED. Dkt 1.

A final judgment in favor of the Secretary of State will issue by separate order.

SO ORDERED.

Signed on February 21, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge